MONROE COUNTY
FILED
AT 1:09 O'CLOCK P M

MAR 25 2020

ALICE SMITH, CLERK
_____ D.C.

## IN THE CIRCUIT COURT OF MONROE COUNTY, ARKANSAS
### CIVIL DIVISION

ELIZABETH CROUCH, individually and as
SPECIAL ADMINISTRATRIX OF THE
ESTATE OF THOMAS DANIEL
CROUCH, DECEASED                                                        PLAINTIFF

VS.                     CASE NO. 48CV-20-30-2

MASTER WOODCRAFT CABINETRY, L.L.C.;
PENSKE LEASING AND RENTAL COMPANY;
WALTER EARL HICKS; and
JOHN AND JANE DOE ENTITIES 1-3                                          DEFENDANTS

---

### COMPLAINT

---

COMES NOW the Plaintiff, Elizabeth Crouch, individually and as Special Administratrix of the Estate of Thomas Daniel Crouch, Deceased, by and through her attorneys, RAINWATER, HOLT & SEXTON, P.A., and for her Complaint against the Defendants, hereby states and alleges the following:

#### I.   RESIDENCY & PARTIES

1. Plaintiff Elizabeth Crouch, individually and as the duly appointed Special Administratrix of the Estate of Thomas Daniel Crouch, deceased, is, and was at all times relevant, a resident of Mabelvale, located in Saline County, Arkansas. Mrs. Crouch was appointed the Special Admininstratrix of the Estate of Thomas Daniel Crouch, her son, by Court Order. See attached Exhibit 1.

1

2. Defendant, Master Woodcraft Cabinetry, L.L.C., was at all times relevant an out of state corporation licensed and registered with the Arkansas Secretary of State to do business within the boundaries of the state of Arkansas as a manufacturer, distributer and/or transporter of cabinets, etc. through the use of either company owned and/or leased tractors and/or trailers operated by employees of Defendant. Upon the Plaintiff's information and belief Defendant Master Woodcraft Cabinetry, L.L.C. may be served with process with its registered agent for service the Business Filings Incorporated, located at 124 West Capitol Ave., Ste. 1900, Little Rock, Arkansas 72201.

3. Defendant Penske Leasing and Rental Company is a national company that sells, leases and/or services tractors and/or trailers to businesses and/or individuals throughout the United States, including Arkansas, for use on the roadways of Arkansas. Defendant Penske Leasing and Rental Company, upon the Plaintiff's information and belief, owned and/or leased a tractor and/or trailer to Defendant Master Woodcraft Cabinetry, L.L.C. for their use in the transportation of products through Arkansas. Plaintiff believes that a tractor and/or trailer owned by Defendant Penske Leasing and Rental Company and operated via a lease and/or some other agreement with Defendant Master Woodcraft Cabinetry, L.L.C. was involved in a motor vehicle collision with her son, Thomas Daniel Crouch, on or about October 31, 2019 in Monroe County, Arkansas, who perished in the collision.

4. Defendant Walter Earl Hicks, is, upon the Plaintiff's information and belief, a resident of the state of Texas and may be served with process at 1300 West Emory St., Marshall, Texas 75670. Upon the Plaintiff's information and belief, Defendant Walter Earl Hicks was an employee and/or agent of Defendant Master Woodcraft Cabinetry, L.L.C. and was operating the tractor and trailer on the day in question at their instruction, training, supervision, dominion, request and demand.

5.      Defendant John and Jane Doe Entities 1-3 are parties that are presently unknown to the Plaintiff, however, it is anticipated their names may be learned during the scope and course of discovery. It is the Plaintiff's belief that these are entities responsible either through respondeat superior for Defendant Hicks and/or are entities responsible for failing to train, educate, direct, prepare, set policy, and/or give guidance to Defendant Hicks, including, but not limited to, allowing him to make unnecessary and/or illegal stops. Upon learning their identity Plaintiff was promptly substitute and amend the pleadings to conform within.

6.      Plaintiff's counsel has executed a "John Doe Affidavit" in accordance with A.C.A. section 16-56-125 and is attached hereto as Exhibit 2.

7.      The incident giving rise to this cause of action occurred on Interstate 40 east in rural Monroe County, Arkansas on or around log mile 211.

## II.     JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to Ark. Code Ann. § 16-13-201(a), which provides that circuit courts shall have original jurisdiction of all actions and proceedings for the redress of civil grievances except where exclusive jurisdiction is given to other courts.

9.      Venue is proper pursuant to Ark. Code Ann. § 16-60-101, which provides that all actions for damages for personal injury may be brought in the county where the collision occurred which caused the injury or in the county where the person injured resided at the time of the injury.

## III.    BASIC PREMISE

10.     This is a negligence case which arises from an incident that occurred on or about October 31, 2019 on Interstate 40 East on, or around, mile 211 around 11:00 a.m. The actions of Defendant Walter Earl Hicks took the life of Thomas D. Crouch as more specifically pled herein.

3

## IV. FACTS

11. On or about October 31, 2019, around 11:00 a.m., Thomas D. Crouch was traveling eastbound on Interstate 40 in a 2017 Ford Transit van he operated as a work vehicle for his employer. Thomas D. Crouch was the father of two (2) young children with another on the way.

12. Thomas D. Crouch was operating his van in a normal manner, including using the cruise control function on the van to control the speed of his van. It was estimated to be traveling approximately 78 miles per hour.

13. At the same time and place, Defendant, Walter Earl Hicks, was operating a 2019 Freightliner Cascadia pulling a 2015 Vang enclosed box transport cargo trailer also heading eastbound on Interstate 40.

14. The tractor and/or trailer operated by Defendant Walter Earl Hicks was owned by Defendant Penske Leasing and Rental Company.

15. The tractor and/or trailer operated by Defendant Walter Earl Hicks and owned by Defendant Penske Leasing and Rental Company was, upon the Plaintiff's information and belief, leased to Defendant Master Woodcraft Cabinetry, LLC, based in Marshall, Texas.

16. Approximately five (5) miles west of the city of Brinkley, Arkansas city limits, a collision occurred that took the life of Thomas D. Crouch.

17. The crash occurred in the eastbound right outside lane of traffic on Interstate 40 east.

18. At some point in time prior to 11:00 a.m. that morning, Defendant Walter Earl Hicks drove the tractor and transport trailer under his dominion and control onto the right side shoulder of Interstate 40 heading east.

19. Defendant Hicks' tractor was not experiencing any mechanical defects that required him to exit from the free flowing traffic eastbound on Interstate 40 to park safely on the shoulder.

4

20. Defendant Hicks was approximately five (5) miles from the proper exit from the Interstate located in the city of Brinkley, Arkansas.

21. Defendant Hicks maneuvered his tractor and trailer onto the shoulder in an area where in front of him was a guardrail that would prevent him from driving on the shoulder to regain a proper speed for a safe re-entry onto the flow of traffic onto Interstate 40.

22. While it is unknown at this time what the nature and reason for Defendant Hicks to leave the freeway at that moment in time, it is believed that Defendant Hicks needed to relieve himself so he pulled over to the side of the roadway instead of continuing on to the Interstate exit ramp that was less than five (5) miles away.

23. Defendant Hicks did whatever was needed when he made the unscheduled stop, then began to try to re-enter the highway.

24. Defendant Hicks, running out of shoulder, made the decision to starting moving over into the right hand lane of traffic, despite not acquiring the necessary speed and distance for the tractor and trailer to safely re-enter the controlled flow of traffic.

25. Defendant Hicks, carelessly and negligently, in violation of the rights and safety of others and the general public, failed to keep a proper lookout for other vehicles, pulled the tractor and trailer he was operating onto the Interstate in the right hand lane directly in front of the van operated by Thomas D. Crouch.

26. Upon the Plaintiff's information and belief Defendant Hicks' tractor and trailer had reached a speed of approximately 33 miles per hour at the time he decided to pull into the right hand lane of traffic heading east on Interstate 40.

27. There was not any warning to Thomas D. Couch of the movement to enter the free flow of traffic by Defendant Hicks.

28. Thomas D. Crouch had nowhere to go but directly underneath the 2015 Vang cargo box trailer as his transit van approached the tractor and trailer operated by Defendant Hicks.

29. The force of the collision between the transit van and cargo box trailer caused significant damage to the 2017 transit van, with debilitating bodily injuries to Thomas D. Crouch.

30. The force of the collision was fatal to Thomas D. Crouch, age 33, who was pronounced deceased by Monroe County Deputy Coroner C.J. Williams at approximately 11:07 a.m.

31. Thomas D. Crouch perished as a result of the injuries sustained by the negligent actions of Defendant Walter Earl Hicks.

32. At the time of the collision, Defendant Hicks was an agent and/or employee of Defendant Master Woodcraft Cabinetry, LLC.

33. At the time of the collision Defendant Hicks was operating the tractor and/or trailer owned and leased by Defendant Penske Leasing and Rental Company.

34. At the time of the collision, Defendant Hicks was acting in the course and scope of his employment with Defendant Master Woodcraft Cabinetry, LLC.

35. Prior to his death Thomas D. Crouch was gainfully employed and earning a living and supporting himself and contributing to his family.

36. Thomas D. Crouch was 33 years of age at the time of his death and was a healthy, able-bodied man with a normal life expectancy.

37. Thomas D. Crouch left to survive him his mother, Elizabeth Crouch, the special Administratrix, his father and three (3) minor children, each of whom have suffered and will continue to suffer mental anguish by reason of such wrongful death.

## V. CAUSE OF ACTION NO. ONE—NEGLIGENCE OF DEFENDANT WALTER EARL HICKS

38.  All of the allegations previously pled herein are re-alleged as though stated word-for-word.

39.  Separate Defendant Hicks was negligent when he improperly pulled over to the shoulder of Interstate 40 to relieve himself.

40.  Separate Hick was negligent when he made the decision to re-enter the flow of traffic without any warning to his slower than usual rate of speed.

41.  Separate Defendant Hicks was negligent when he failed to warn the other motorists on the Interstate, including Thomas D. Crouch, that he stopped, was at an inadequate speed for re-entry, and continued to enter the right lane of traffic in a willful and wanton manner and in total disregard of the rights and safety of others using the roadway.

42.  Defendant Hicks was negligent in the following particulars:

   (a)  Driving in such a careless manner as to evidence a failure to keep a proper traffic lookout for other, in violation of Ark. Code Ann. § 27-51-104(a);

   (b)  Driving in such a careless manner as to evidence a failure to maintain proper control, in violation of Ark. Code Ann. § 27-51-104(a), (b)(6) & (b)(8);

   (c)  Driving at a speed that was not reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, in violation of Ark. Code Ann. § 27-51-201(a)(1);

   (d)  Operating a vehicle in such a manner which would cause a failure to maintain control, in violation of Ark. Code Ann. § 27-51-104(b)(6);

(e) Driving in a manner that was inattentive and such inattention was not reasonable and prudent in maintaining vehicular control, in violation of Ark. Code Ann. § 27-51-104(b)(8);

(f) Failing to keep a lookout for other vehicles, in violation of the common law of Arkansas;

(g) Failing to keep the tractor-trailer under control, in violation of the common law of Arkansas;

(h) Failing to apply the brakes for the tractor-trailer preceding the collision in a timely manner to avoid or to mitigate injuries and damage;

(i) Failing to stop, swerve or otherwise act to apply evasive or emergency maneuvers after he knew, or by reasonable care should have known, that there was a reasonable likelihood that the tractor-trailer would be struck by a vehicle already in the lane of traffic and operating in a safe and maintained manner causing personal injury or even death;

(j) Failing to sound a horn or give warning at any time prior to or during the crash sequence;

(k) Allowing the tractor-trailer to enter the roadway at a low rate of speed directly in front of the Crouch vehicle;

(l) Failing to drive at a speed no greater than was reasonable and prudent under the circumstances, having due regard for any actual or potential hazards, in violation of the common law of Arkansas;

(m) by making an improper stop on the shoulder without a safe distance to regain a safe and proper speed for re-entry onto the Interstate and failing to keep a safe lookout for oncoming traffic; and

8

  (n) Otherwise failing to exercise ordinary care under the circumstances.

43. In addition, Separate Defendant Hicks failed to use the ordinary and reasonable care required under the circumstances by engaging in the following separate and independent acts or omissions:

  (a) Failing to obtain adequate education, direction and preparation, as well as becoming aware of policy and guidance, prior to operating the tractor-trailer he was driving;

  (b) Operating a commercial motor vehicle without the required knowledge to do so safely;

  (c) Operating a commercial motor vehicle without the required skills to do so safely;

  (d) Failing to look out for oncoming traffic on the interstate at any time prior to the collision;

  (e) Failing to recognize a hazard and drive so as to prevent the hazard from turning into an emergency; and

  (f) failing to exit properly from the Interstate at a safe location.

44. At all relevant times, Defendant Hicks was a driver or operator of "commercial motor vehicles" as defined by 49 C.F.R. parts 382 *et seq.* Of the Federal Motor Carrier Safety Regulations. These federal regulations imposed certain mandatory duties and prohibitions upon Defendant Hicks to ensure that in driving a commercial motor vehicle he conducted himself in a manner that protected public health, safety and welfare.

45. Defendant Hicks violated the Federal Motor Carrier Safety Regulations, as adopted by the Arkansas State Highway Commission Regulations, including but not limited to:

9

    (a)    Violation of §392.2 in failing to operate a commercial vehicle in accordance with the laws, ordinances, and regulations of the State of Arkansas;

    (b)    Violation of §392.3 providing that not driver shall operate a motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him to begin or continue to operate a commercial motor vehicle; and

    (c)    Violation of §392.14 requiring extreme caution and reduced speed when hazardous conditions exists.

46. A reasonably careful person, operating a commercial motor vehicle under similar circumstances, would foresee that the failures in duties of care listed above would result in devastating injuries, including possible death, to other persons traveling on public highways like Plaintiff.

## VI. CAUSE OF ACTION - NEGLIGENCE OF SEPARATE DEFENDANT MASTER WOODCRAFT CABINETRY, L.L.C.

47. All of the allegations previously plead herein are re-alleged as though stated word-for-word.

48. Defendant Master Woodcraft Cabinetry, LLC. was negligent in the following particulars:

    (a)    Failing to have adequate policies and procedures regarding its drivers driving and the entering and exiting of the shoulder on the Interstate when no mechanical problem exists;

    (b)    Failing to adequately train, educate, direct, prepare, set policy or give guidance to its drivers regarding driving and using the shoulder in a proper manner;

(c) Failing to adequately train, educate, direct, prepare, set policy or give guidance to its drivers regarding safe driving practices;

(d) Failing to exercise ordinary care with respect to training, educating, directing, preparing, setting policy or giving guidance to its drivers regarding safe driving practices; and

(e) Otherwise failing to exercise ordinary care under the circumstances;

49. In addition, Defendant Master Woodcraft Cabinetry, L.L.C. failed to use ordinary and reasonable care required under the circumstances by engaging in the following separate and independent acts and omissions:

(a) That Defendant Master Woodcraft Cabinetry, L.L.C. failed to properly train, monitor and supervise Defendant Hicks in the safe operation of the tractor trailer truck when approaching hazards;

(b) That Defendant Master Woodcraft Cabinetry, L.L.C. failed to properly train, monitor and supervise Defendant Hicks about distracted driving and safely entering and exiting the Interstate from the shoulder;

(c) That Defendant Master Woodcraft Cabinetry, L.L.C. failed to properly train, monitor and supervise Defendant Hicks about the duties imposed upon him by the FMSCA and as a holder of a CDL;

(d) That Defendant Master Woodcraft Cabinetry, L.L.C. knew or should have known that Defendant Hicks was not competent, satisfactory, qualified, or safety-conscious enough to operate the tractor-trailer he was employed to drive; and

    (e)    That Defendant Master Woodcraft Cabinetry, L.L.C. misjudged and/or overestimated the skills and ability of Defendant Hicks to drive the tractor-trailer.

50.    That Defendant Master Woodcraft Cabinetry, L.L.C. failed to comply with industry standards as set forth by the DOT and relevant federal regulations dictated for motor carriers in properly training drivers such as Defendant Hicks, which is evidence of negligence, including but not limited to the following particulars:

    (a)    Failing to design, develop, and implement adequate safety management controls related to speed management, space management, seeing ahead, total stopping distance, hazard perception, accident countermeasures, and/or fatigue and distracted driving awareness;

    (b)    Failing to train Defendant Hicks regarding speed management, space management, seeing ahead, total stopping distance, hazard perception, accident countermeasures and fatigue, and distracted driving awareness;

    (c)    Failing to train, monitor and supervise the driving habits of Defendant Hicks;

    (d)    Supervision of its business operations in failing to properly monitor the driving habits and records of its drivers, employees, and/or agents, specifically Defendant Hicks;

    (e)    Supervision of its drivers, employees, and/or agents, specifically Defendant Hicks;

    (f)    Instruction of its drivers, employees, and/or agents, specifically Defendant Hicks;

(g) Entrustment of its tractor-trailer to its drivers, employees, and/or agents, specifically Defendant Hicks;

(h) Entrustment of a tractor-trailer to its drivers, employees, and/or agents, specifically the Defendant Hicks;

(i) Compliance with federal and/or state regulation and industry standards, as referenced in this Complaint and as developed during the discovery of this case;

(j) Failing to utilize available information and technology to properly monitor its drivers, employees, and/or agents, specifically the Defendant Hicks for compliance with company policies and/or state and federal regulations;

(k) Allowing Defendant Hicks to operate a commercial motor vehicle despite knowledge of his inability to do so safely;

(l) Failing to have adequate safety management controls in place or in use to ensure compliance with the required safety fitness standard;

(m) Failing to budget an appropriate amount of money to design, develop, and implement safety management controls in the areas of speed management, space management, seeing ahead, total stopping distance, hazard perception, accident countermeasures and fatigue and distracted driving awareness; and

(n) Failing to utilize available technology to monitor and audit the safety performance of its driver's including Defendant Hicks.

51. That the conduct of Defendants are in violation of state and/or federal law, including but not limited to, 49 C.F.R. §383.110-123, 49 C.F.R. §390.11, 49 C.F.R. §390.3; 49 C.F.R. §392.1, 49 C.F.R. §392.2; 49 C.F.R. §392.3; 49 C.F.R. §392.14, 49 C.F.R. §392.7, 49

C.F.R. §393.4, 49 C.F.R. §396.11, 49 C.F.R. §396.17, 49 C.F.R. §396.3, A.C.A. §27-51-104, §27-51-201, §27-51-204 and §27-52-305.

## VII. CAUSE OF ACTION - RESPONDEAT SUPERIOR LIABILITY

52. All of the allegations previously plead herein are re-alleged as though stated word-for-word

53. At all times relevant, Separate Defendant Hicks was an agent and/or employee of Separate Defendant Master Woodcraft Cabinetry, L.L.C.

54. At the time of the incident, Separate Defendant Hicks was acting within the scope of his employment with Defendant Maser Woodcraft Cabinetry, L.L.C.

55. Separate Defendant Master Woodcraft Cabinetry, L.L.C. is legally responsible and vicariously liable for the negligence of its agent and employee, Defendant Hicks, under the legal doctrines of joint enterprise, respondeat superior, and the principles of agency as adopted in the State of Arkansas.

56. The negligence of Defendant Hicks is imputed to Defendant Master Woodcraft Cabinetry, L.L.C. as a matter of law.

## VII. NEGLIGENCE OF SEPARATE DEFENDANT PENSKE LEASING AND RENTAL COMPANY

57. All of the allegations previously plead herein are re-alleged as though stated word-for-word.

58. Separate Defendant Penske Leasing and Rental Company, upon the Plaintiff's information and belief, leased the tractor and trailer operated by Defendant Hicks to Defendant Master Woodcraft Cabinetry, LLC.

14

59. Defendant Penske knew, or should have known, that Defendant Master Woodcraft failed to adequately hire, train, educate, prepare and direct their agents and/or employees, such as Defendant Hicks, on the risks and dangers of not maintaining a proper lookout while driving.

60. Defendant Penske knew, or should have known, that Defendant Master Woodcraft placed under-prepared drivers, such as Defendant Hicks, in the leased tractors and trailers owned by Penske.

61. The failure by Defendant Penske to properly vet its lessee for its failure to produce unqualified drivers to operate its leased equipment, caused the death of Thomas D. Crouch.

62. The negligent acts and omissions of Defendant John Does 1-2 and John and Jane Doe Entities 1-3 are currently unknown at this time but shall be proved by the evidence learned and discovered in the discovery phase of this case.

## IX. PROXIMATE CAUSATION

63. All of the allegations previously plead herein are re-alleged as though stated word-for-word.

64. The Defendants' negligence was an actual and proximate cause of the collision described herein and of the personal injuries and damages sustained by Plaintiffs. The injuries would not have occurred but for the conduct of the Defendants.

## X. INJURIES AND COMPENSATORY DAMAGES

65. All of the allegations previously plead herein are re-alleged as though stated word-for-word.

66. Thomas D. Crouch sustained severe personal injuries and died, and Plaintiffs sustained damages, as a result of the collision.

67. Thomas D. Crouch experienced extreme terror immediately before and after the collision.

15

68. The Estate of Thomas D. Crouch, who are represented in this litigation by Plaintiff Elizabeth Crouch, Special Administratrix, have incurred funeral expenses.

69. Plaintiff is entitled to recover under Arkansas law for Thomas D. Crouch's wrongful death and survival damages for his heirs at law under A.C.A. §16-62-102 and A.C.A. §16-62-101, which includes, but are not limited to, the following measure of damages:

   (a) pecuniary injuries sustained, including benefits, goods, and services that the decedents would have contributed, including the instruction, moral training, and supervision of education that might have reasonably been given;

   (b) mental anguish suffered in the past and reasonably certain to be suffered in the future;

   (c) reasonable value of funeral expenses;

   (d) conscious pain and suffering of the decedent prior to his death;

   (e) value of any earnings, profits or salary lost by the decedent and his heirs; and

   (f) the decedent's loss of life.

70. Plaintiff hereby demands loss of life damages to the full extent allowed under Arkansas law for the death of Thomas D. Crouch.

71. Plaintiff claims all damages allowed by Arkansas law for the wrongful death of Thomas D. Crouch.

72. The heirs at law of Thomas D. Crouch are entitled to recover damages for the wrongful death of Thomas D. Crouch.

73. The injuries and damages described herein have been suffered in the past and will be continuing in the future.

## XI. **DEMAND FOR JURY TRIAL**

74. Plaintiff respectfully requests a trial by jury.

## XII. **DEMAND & PRAYER**

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants for a sum in excess of that required for federal court jurisdiction in diversity of citizenship cases and sufficient to fully compensate her for her damages.

The Plaintiff respectfully prays for judgment against Defendants for pre-judgment interest and post judgment interest at the maximum rate allowed by law; for reasonable expenses; costs; and for all other proper relief to which she may be entitled.

Respectfully Submitted.
Attorneys for Plaintiff

_____
Bryce Brewer (Ark. Bar No. 2002013)
RAINWATER, HOLT & SEXTON, P.A.
P.O. Box 17250
Little Rock, AR 72222
Telephone:   (501) 868-2500
Facsimile:   (501) 868-2505
Email:       bbrewer@rainfrim.com

## IN THE CIRCUIT COURT OF MONROE COUNTY, ARKANSAS
### CIVIL DIVISION

**ELIZABETH CROUCH,** **PLAINTIFF**
individually and as
**SPECIAL**
**ADMINISTRATRIX OF**
**THE ESTATE OF**
**THOMAS DANIEL**
**CROUCH, DECEASED**

VS.  NO. _____

**MASTER WOODCRAFT** **DEFENDANTS**
**CABINETRY, LLC;**
**PENSKE LEASING AND**
**RENTAL COMPANY;**
**WALTER EARL HICKS;**
**and JOHN AND JANE**
**DOE ENTITIES 1-3**

STATE OF ARKANSAS )
                   )  ss:
COUNTY OF PULASKI  )

Comes now Bryce Brewer, and states, upon oath, the following:

1. I represent Plaintiff, Elizabeth Crouch, in the above matter.

2. Plaintiff, Elizabeth Crouch, is seeking a judgment against unknown tortfeasors.

3. The names of the unknown tortfeasors in this action will be designated by the pseudo-names John and Jane Doe Entities 1-3, and will be named as such in the Plaintiff's Complaint.

4. Upon determining the identities of John and Jane Doe Entities 1-3, Plaintiff's Complaint will be amended by substituting the real name for the pseudo-name.

5. This affidavit is made pursuant to A.C.A. § 16-56-125.

Bryce Brewer

3/24/20
Date

**EXHIBIT A**

SWORN AND SUBSCRIBED before me on the 24th day of March, 2020.

_Michelle P. Bond_
Notary Public

My commission expires: 5-29-2028

[Notary Seal: MICHELLE BOND, COMM. EXP. 5-29-2028, No. 12367067, FAULKNER COUNTY, NOTARY PUBLIC - ARKANSAS]

2