IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

ELIZABETH CROUCH, individually and as
SPECIAL ADMINISTRATRIX OF THE ESTATE
OF THOMAS DANIEL CROUCH, DECEASED                    PLAINTIFF

V.                          CASE NO. 2:20CV-0078 KGB

MASTER WOODCRAFT CABINETRY, L.L.C.
AND WALTER EARL HICKS                                DEFENDANTS

**BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE
OPINIONS OF RALPH SCOTT, JR., PH.D.**

Come defendants, Master Woodcraft Cabinetry, L.L.C. and Walter Earl
Hicks, by and through counsel, Barber Law Firm PLLC, and for their Brief in
Support of Motion to Exclude Opinions of Ralph Scott, Jr., Ph.D., state:

**I. INTRODUCTION**

Plaintiff identified an economist, Ralph Scott, Jr., Ph.D., as an expert
witness in this matter and has produced two slightly different reports
generated by Dr. Scott. The report attached as Exhibit A, which is entitled
"Loss of Life" contains a section entitled Residual Value of Life in Excess of
Earning Capacity. Meanwhile, the report attached as Exhibit B contains a
section entitled "Loss of Life." However, each of the aforementioned sections are
identical and do not contain a single opinion held by Dr. Scott.  Rather, he
simply presents studies performed by the Department of Transportation and
the Environmental Protection Agency – although neither had anything to do
with the value of a human life, much less the value of Thomas Crouch's life;

On February 1, 2021, defense counsel deposed Dr. Scott. During the course of his deposition, Dr. Scott confirmed he did not know Mr. Crouch and that he did not know what Mr. Crouch calculated his life to be worth.  He also confirmed that the two studies he cited were done as a cost benefit analysis - meaning whether it was cost effective for the federal government to undertake certain infrastructure repair/improvement projects. Finally, he confirmed that the information he would present to the jury regarding the "Residual Value of Life" are not even opinions he holds, but simply a baseline to present to the jury simply based upon aggregate national numbers that are not specific to Mr. Crouch.

Dr. Scott is a qualified expert in the economic field, but the above-referenced opinions offered are unreliable, are not based on the evidence of this case, and are wholly speculative.  As such, these opinions fail to comply with Rules 702 and 703 of the Federal Rules of Evidence and well-established Arkansas and Federal case law.  Moreover, his opinions are entirely contrary to Arkansas law, including prior holdings of the Arkansas Supreme Court, as to what "loss of life" damages constitute under Ark. Code Ann. 16-62-102.  If Dr. Scott were allowed to testify on these topics at trial, the jury would be misled into believing Dr. Scott is offering qualified expert testimony, which would unduly prejudice defendant.  Therefore, this Motion should be granted by this Court, with the testimony/opinions of Dr. Scott concerning "Residual Value of Life" and/or "Loss of Life" being excluded from the trial.

## II. APPLICABLE STANDARD FOR ADMISSIBILITY

Plaintiff bears the burden of proving the admissibility of her expert's testimony. In determining whether plaintiff has met her burden, the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Daubert v. Merrell Dow Pharm., Inc. (Daubert I)*, 509 U.S. 579, 592 (1993); *see Farm Bureau Mut. Ins. Co. v. Foote*, 341 Ark. 105, 115 (2000) ("This court has not previously adopted the holding in *Daubert*. We do so now"). In *Daubert I*, the Supreme Court of the United States construed Rule 702 to impose on federal courts the gatekeeping role of ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  In performing its duty as "gatekeeper," the trial judge must determine whether or not the underlying proposed expert testimony is scientifically valid, amounts to "scientific knowledge," constitutes "good science," and is "derived by the scientific method." *Daubert v. Merrell Dow Pharm., Inc. (Daubert II)*, 43 F.3d 1311, 1315 (9th Cir. 1995). In addition to meeting the *Daubert* standard, any proffered expert opinion must assist the trier of fact in understanding the evidence or in determining a fact in issue.

*Daubert* held that courts should consider five criteria when determining the admissibility of expert testimony: (1) whether the proffered knowledge can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or technique has gained general acceptance in the

relevant scientific community. *See **Daubert I***, 509 U.S. at 592- 94; ***Green v. George's Farms, Inc.***, 378 S.W.3d 715, 718 (Ark. 2011). A trial court should make findings on each of the relevant factors concerning whether expert testimony is scientifically reliable in order to properly exercise its discretion. *See **Kumho Tire Co., Ltd. v. Carmichael***, 526 U.S. 137, 159 (1999) (Scalia, J., concurring) ("[I]n a particular case[,] the failure to apply one or another of [the ***Daubert*** factors] may be unreasonable, and hence an abuse of discretion.").

The rationale behind the ***Daubert*** standard is to ensure that an expert employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *See **Kumho Tire Co.***, 526 U.S. at 152. Its overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on *principles and methodology*, not on the *conclusions* that they generate. *See **Daubert I***, 509 U.S. at 594-95.

### III. ARGUMENT

Dr. Scott should be precluded from offering testimony at the trial of this matter concerning the purported "residual value of life" and/or "loss of life" due to the fact his opinions on this subject are unreliable.  There is no question that Dr. Scott has more than adequate qualifications to provide expert economic testimony.  After all, Dr. Scott has been an economics professor at Hendrix University, in Conway, Arkansas, for many years and holds a Ph.D. in

that line of study.   Nevertheless, simply because Dr. Scott is adequately qualified to testify as an expert in the economic field does not mean that all the opinions he shared in this matter are sufficiently reliable to be admitted before the jury.

Regarding the purported loss of life damages sustained by the Estate of Mr. Crouch, Dr. Scott opined in his deposition that the residual value of life" is a "starting point" of sorts for the jury to determine damages for the decedent's loss of life.   Dr. Scott bases his opinions on reports published by the Department of Transportation ("DOT") and the Environmental Protection Agency ("EPA").   The studies conducted by these government agencies, according to Dr. Scott, are cost/benefit analysis comparing what an individual/entity is willing to pay for risk reduction.   Specifically, it is Dr. Scott's opinion these studies look at what an average person would pay to reduce the risk of death.   Dr. Scott considers this to be a "value of life" analysis, which he then calls "statistical value of life."   This position has been formulated by Dr. Scott despite the fact that the DOT study expressly notes: "What is involved is not the valuation of life as such, but the valuation of reductions and risks."   See Exhibit "A," *DOT, Revised Departmental Guidance 2014*.   Dr. Scott concedes the EPA study also acknowledges it, too, is not designed to formulate a value of life.   Nevertheless, he continues to take the position that the studies do, contrary to their own statements, provide a statistical value of life.   Such opinions by Dr. Scott should be excluded from trial as unreliable, lacking in evidentiary support, and misleading to the jury.

This state's statutes provide that "a decedent's estate may recover for the decedent's loss of life as an independent element of damages."  Ark. Code Ann. §16-62-101(b).  These "loss of life damages" have been interpreted as being those that would "compensate a decedent for the loss of the value that the decedent would have placed on his or her own life."  *Williamson v. Baptist Health Med. Ctr.*, 2016 Ark.App. 79, *4 (citing *One Nat'l Bank v. Pope*, 372 Ark. 208, 272 S.W.3d 98 (Ark. 2008); *Durham v. Marberry*, 356 Ark. 481, 156 S.W.3d 242 (Ark. 2004)).  However, it has equally been recognized that loss of life damages are not the same as damages for loss of enjoyment of life, even though both are hedonic.  <u>See</u> *Durham*, at 489, 156 S.W.3d at 246.  The Arkansas Supreme Court has not expressly held expert testimony concerning hedonic loss of life damages to be improper, but it has noted: "No rule has been established - and in the nature of things none can be - for determining what compensation should be paid for loss of life…"  *Id.* at 493, 156 S.W.3d at 249 (quoting *Clark & Sons v. Elliott*, 251 Ark. 853, 857, 475 S.W.2d 514, 517 (Ark. 1972)).

The United States District Court for the Eastern District of Arkansas importantly took up the issue of whether expert testimony on loss of life damages is appropriate in the case of *McMullin v. United States*, 515 F.Supp.2d 914 (E.D. Ark. 2007).  In interpreting Arkansas law, that the Court agreed with the state Supreme Court that loss of life damages are those damages that would compensate a decedent for the value the decedent would have placed on his/her own life.  *Id.* at 921.  The Court then attempted to determine how such

damages should be calculated, evaluating an Arkansas Law Review article on

the subject:

> It appears that only Connecticut, Hawaii, New Hampshire, New Mexico and Arkansas allow for the recovery by the decedent's estate of loss-of-life damages incurred after death. [Ali M. Brady, Note, *The Measure of Life: Determining the Value of Lost Years after* <u>*Durham v. Marberry*</u>, 59 Ark. L. Rev. 125 n.4 (2006)].   The Arkansas Law Review note analyzes various methods of proving and measuring such damages and explains why the author believes that Arkansas should adopt the Connecticut approach. *Id.* at 142-45.   First, it is recognized that the Arkansas Supreme Court's *Durham* opinion appears to adopt a purely subjective standard. ...
> ...
>
> The note then deals with the issue of the use of expert witnesses to support that approach and concludes that none would meet the *Daubert* test.  This Court agrees with Ms. Brady's *Daubert* analysis. In particular, the Court **agrees that the expert opinions offered could not be tested because they are "attempting to quantify something which cannot truly be determined: what is the value of a human life?"** *Id.* at 138 (citing *Estate of Sinthasomphone v. City of Milwaukee*, 878 F.Supp. 147, 152 (E.D. Wis. 1995).   Stated otherwise, the law does not provide the standard as to which an expert could apply his/her expertise. Under such circumstances **the expert becomes the "<13th> juror."**   The Court also notes that such expert testimony by different experts "using the same methodology come up with drastically different values for the statistically average life...from as low as $0 to as high as $15 million. *Id.* at 138-39 (internal quotations omitted).

*Id.* at 923-925 (emphasis added).   Dissimilar from expert calculations, the

Court recognized that appropriate factors for a jury to consider for loss of life

include the decedent's family support, loving relationships, and loving home.

*Id.* at 928.

The *McMullin* decision was cited with approval by the Arkansas Supreme Court in the case of *One Nat'l Bank v. Pope, supra.* The Court was not presented with the issue of whether expert testimony could be properly given for loss of life damages, but it did agree with the *McMullin* court that such damages could be shown with evidence similar to that used for loss of enjoyment of life damages. *Id.* at 214, 272 S.W.3d at 102. It then found that evidence of a decedent's familial relationship, employment, and activities/hobbies constituted evidence of loss of life damages. *Id.* at 214-215, 272 S.W.3d at 103.

Further in-line with the *McMullin* logic, other jurisdictions have expressly refused to permit an expert witness to place a specific value on a decedent's life. <u>See</u>, *e.g.*, *Smith v. Dorchester Real Estate, Inc.*, 732 F.3d 51 (1st Cir. 2013); *Anderson v. Nebraska Dept. of Social Services*, 538 N.W.2d 732 (Neb. 1995). The Seventh Circuit Court of Appeals in particular, in the case of *Mercado v. Ahmed*, 974 F.2d 863 (7th Cir. 1992), was presented with a situation almost identical to that at issue in the litigation at hand. Therein, the Court stated:

> On appeal, the plaintiff attacks the reasoning of the trial judge directly, asserting that [plaintiff's expert] should have been given the "***opportunity to supplant the jurors' own knowledge as to the value of life...***" [] This frames the issue precisely: does [plaintiff's expert], ***supported by his extensive willingness-to-pay research***, know better than the average juror how much life is worth?
>
> As we noted above, the district judge did not believe that [plaintiff's expert] offered the jury any "expertise" because (1) no consensus among experts supported [plaintiff's expert's] method of valuing life and (2) [plaintiff's expert's] research was no more than a compilation of the opinions, expressed through spending decisions,

of a large number of Americans as to the value of life.  The first criticism is irrefutable: the plaintiff could point to no expert consensus supporting [plaintiff's expert's] methodology.   The second criticism is also on the mark, since [plaintiff's expert] concedes that his method relies on arriving at a valuation of life based on analyzing the behavior of non-experts.
…

…we can say with confidence that the district court's decision to bar [plaintiff's expert's] testimony was not reversible error. [Plaintiff's expert] has taken up a daunting task: to develop a methodology capable of producing specialized knowledge to assist jurors in determining the monetary value of being alive.   The district court ruled that, despite [plaintiff's expert's] training, extensive research and countless calculations, his testimony **would not aid the jury in evaluating the evidence and arriving at its verdict** (the true test of expert testimony under Fed. R. Evid. 702) **because [plaintiff's expert] was no more expert in valuing life than the average person**.   This conclusion may be less a reflection of the flaws in [plaintiff's expert's] methodology than **on the impossibility of any person achieving unique knowledge of the value of life.**

*Id.* at 870-871 (emphasis added) (internal citations omitted).   Similarly, in

*Montalvo v. Lapez*, 884 P.2d 345 (Haw. 1994), the Supreme Court of Hawaii

held:

The measurement of the joy of life is intangible.  A jury may draw upon its own life experiences in attempting to put a monetary figure on the pleasure of living.   It is "a uniquely human endeavor… requiring the trier of fact to draw upon the virtually unlimited factors unique to us as human beings." [] **Testimony of an economist would not aid the jury in making such measurements because an economist is no more expert at valuing the pleasure of life than the average juror**.  "The loss of enjoyment of life resulting from a permanent injury is… not subject to an economic calculation." []

*Id.* at 303 (emphasis added) (internal citations omitted).  As such, the majority

approach taken nationwide is that loss of life and/or loss of enjoyment of life

damages are simply too subjective to permit for an expert to place a hard value on life.

Despite the above case law decisions and, in particular despite the express Arkansas Supreme Court holding of what loss of life damages constitute, Dr. Scott still opines loss of life damages mean "value of life." Dr. Scott does not have some innate knowledge which permits him to know the value a decedent placed on his/her own life. He specifically has no information as to the value Thomas placed on his own life. Dr. Scott did not know Crouch, had never met Crouch, and does not have any insight regarding Crouch's personal life, work life, family life, or any other aspect of his life highlighted by the courts above as being proper evidence of loss of life damages.

The opinions Dr. Scott intends to provide to the jury at the trial of this cause as to the purported "residual value of life" of Thomas Crouch's life are plainly based on governmental cost/benefit analyses related to cost-vs-fatality reduction spending and are not at all relevant to Thomas Crouch's own life valuation. This is entirely contrary to the controlling case law analyzed herein. See *Williamson v. Baptist Health Med. Ctr., supra.*; *One Nat'l Bank v. Pope, supra.*; *Durham v. Marberry, supra.* Dr. Scott's anticipated testimony is irrelevant as to this issue; is unreliable based on its lack of connection to Thomas Crouch's life; is un-testable due to the lack of consensus among experts on the subject; and is misleading since it is not formulated in the manner required by Rule 702 of the Arkansas Rules of Evidence.

WHEREFORE, defendants, Master Woodcraft Cabinetry, L.L.C. and Walter Earl Hicks, pray that their Motion to Exclude Opinions of Ralph Scott, Jr., Ph.D. be granted, that Dr. Scott be precluded from offering any opinions regarding "residual value of life" and/or "loss of life" at the trial of this case, and for all other just and proper relief to which they may be entitled.

Respectfully submitted,

 Michael J. Emerson, AR BIN 84043
memerson@barberlawfirm.com
Ben C. Hall, AR BIN 10159
bhall@barberlawfirm.com
BARBER LAW FIRM PLLC
425 West Capitol Avenue
Suite 3400
Little Rock, AR  72201
501-372-6175 / 888-412-3288 - facsimile