IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

ELIZABETH CROUCH                                                                PLAINTIFF

v.                               Case No. 2:20-cv-00078 KGB

MASTER WOODCRAFT CABINETRY, LLC, *et al.*                        DEFENDANT

**OPINION AND ORDER**

Before the Court are defendants Master Woodcraft Cabinetry, LLC ("MWC"), and Walter Earl Hicks' (jointly "defendants") motion for partial summary judgment on claims against MWC and motion for partial summary judgment regarding claims of wrongful death beneficiaries under Arkansas Code Annotated § 16-62-102 (Dkt. Nos. 10, 12). For the following reasons, the Court denies defendants' motion for partial summary judgment on claims against MWC and grants defendants' motion for partial summary judgment regarding claims of wrongful death beneficiaries under Arkansas Code Annotated § 16-62-102.

**I.      Factual Background**

The factual background is drawn from defendants MWC and Mr. Hicks' statements of facts (Dkt. Nos. 18, 19, 40) and plaintiff Elizabeth Crouch's statements of additional facts and responses to defendants' statement of facts (Dkt. Nos. 29, 31).

Mr. Hicks was driving a semi tractor-trailer on Interstate 40 on October 31, 2019, in the course and scope of his employment with MWC when he decided to pull the rig over to the shoulder of the freeway so he could urinate in a bottle (Dkt. No. 29, ¶ 1). Mr. Hicks was less than five miles from Brinkley, Arkansas, where, Ms. Crouch argues, he could have exited the freeway, entered a truck stop, and urinated in a restroom there (*Id.*, ¶ 2). Mr. Hicks passed numerous rest stops and truck stops where he could have stopped to urinate previously (*Id.*). After relieving himself, Mr. Hicks tried to resume his trip by pulling his rig back onto the freeway (*Id.*, ¶ 3). As

Mr. Hicks reached a speed of no more than 28 miles per hour, with the trailer and tractor at least partially on the freeway lane of travel, decedent Thomas Daniel Crouch collided with the rear of the trailer (*Id.*).

As a result of injuries sustained in the accident, Mr. Crouch died on October 31, 2019 (Dkt. No. 18, ¶ 2; Dkt. No. 19, ¶ 2). Mr. Hicks was employed by MWC and acting in the course and scope of his employment when the accident occurred (Dkt. No. 18, ¶ 3). At the time of his death, Mr. Crouch was survived by his mother, his father, and three minor children (Dkt. No. 19, ¶ 3). Ms. Crouch argues that Mr. Crouch was also survived by an unborn child, still *in utero*, but past the viability point and subsequently born after Mr. Crouch's death (Dkt. No. 31, ¶ 1).

Ms. Crouch argues that MWC set no policy for when its drivers could move to the shoulder of a highway, stop their rig, and relieve themselves, nor did any training or enforcement exist (Dkt, No. 29, ¶ 13). MWC denies these claims (Dkt. No. 40, ¶ 13). MWC's practice was to have its drivers use bulk fuel rather than to stop at truck stops on highways to refuel their rigs (Dkt. No. 29, ¶ 14).

## II.     Summary Judgment Standard

Pursuant to the Federal Rules of Civil Procedure, the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable jury could render its verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). Mere denials or allegations are insufficient to defeat an otherwise properly supported motion for summary judgment. *See Miner v. Local 373*, 513 F.3d

854, 860 (8th Cir. 2008); *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271-72 (8th Cir. 1992).

First, the burden is on the party seeking summary judgment to demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019). If the moving party satisfies its burden, the burden then shifts to the non-moving party to establish the presence of a genuine issue that must be determined at trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita*, 475 U.S. at 586, 587). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**III.   Analysis**

    **A.   Motion For Partial Summary Judgment On Claims Against MWC**

MWC, relying on the Arkansas Supreme Court's decision in *Elrod v. G & R Construction Co.*, 628 S.W.2d 17 (Ark. 1982), contends that it is entitled to summary judgment on plaintiffs' claims of independent negligence against it because it has admitted *respondeat superior* liability. The defendant in *Elrod*, like MWC here, admitted that it was liable for the negligence of its employee under a *respondeat superior* theory. The court dismissed plaintiff's separate claim for negligent entrustment, noting that it was "inclined to follow the majority view which allows plaintiff to proceed on only one theory of recovery in cases where liability has been admitted as to one theory of recovery." *Id.* at 19.

Though there have been no state court cases interpreting *Elrod*, there have been several federal cases interpreting the decision. The court in *Wheeler v. Carlton*, Case No. 3:06-cv-00068 GTE, 2007 WL 30261 (E.D. Ark. 2007), held that a plaintiff may not proceed against an employer trucking company for negligent hiring and retention where the trucking company admits *respondeat superior* liability. The court recognized an exception, however, where the plaintiff "has a valid claim for punitive damages against the employer based on its independent negligence in hiring and retaining the employee." *Id.* at *12; *accord Perry v. Stevens Transport, Inc.*, Case No. 3:11-cv-00048 JLH, 2012 WL 2805026 (E.D. Ark. July 9, 2012) (granting summary judgment on plaintiffs' claim for punitive damages against the driver and employer trucking company and determining that, because plaintiffs could not recover punitive damages, independent claims of negligent hiring, training, supervision, monitoring, and retention against the employer trucking company were barred under *Elrod* and *Wheeler* ).

When confronted with an independent claim of negligence against the employer, the court in *Regions Bank v. White*, Case No. 4:06-cv-01475 JLH, 2009 WL 3148732 (E.D. Ark. 2009), determined that *Elrod* is inapplicable to claims of negligence relating to the employer's policies and procedures. The court explained:

> Regions alleges that Daily Express was negligent in failing to: have an adequate policy regarding the placement of triangles; adequately train its drivers regarding the placement of triangles; and have an escort vehicle available during the trip. Regions also alleges that Daily Express negligently drafted and applied its policy regarding accident procedures, and that is was negligent in maintaining White's truck. . . . Regions will be allowed to proceed on its independent claims of negligence insofar as [they] do not assert negligent hiring, retention, or entrustment.

*Id.* at *5. It should be noted that Regions did not seek punitive damages in the case, so the exception recognized in *Wheeler* did not apply.

The present complaint contains several allegations of negligence relating to MWC's purported failure to maintain adequate policies and procedures (Dkt. No. 1, ¶¶ 48-50). For

4

example, plaintiffs claim that MWC "fail[ed] to adequately train, educate, prepare, set policy or give guidance to its driver regarding safe driving practices." (Dkt. No. 1, ¶ 48(c)). The Court determines that the rationale articulated and applied in *Regions* applies to these claims, and Ms. Crouch may pursue them. Having reached this conclusion, the Court declines to reach the merits of plaintiffs' remaining arguments with respect to this motion. Therefore, based on the record evidence before the Court and drawing all reasonable inferences in Ms. Crouch's favor, defendants' motion for partial summary judgment on Ms. Crouch's claims against MWC is denied.

### B.  Motion For Partial Summary Judgment As To Wrongful Death Claims

Defendants also move for summary judgment on certain of Ms. Crouch's claims brought under the Arkansas Wrongful Death Act, Arkansas Code Annotated § 16-62-102, arguing that, as a matter of law, decedent Mr. Crouch's unborn child, who was unborn at the time of the accident, should be excluded from the possible "beneficiaries" recognized under the Act. Defendants argue that, while § 16-62-102(a)(1) allows an "unborn child" to maintain a cause of action for wrongful death, the legislature has not altered § 16-62-102(d) to recognize an unborn child as a beneficiary of a wrongful death suit (Dkt. No. 13, ¶¶ 3-5). Ms. Crouch maintains that defendants' argument incorrectly interprets the statute and does not square with statutory interpretation of other Arkansas statutes (Dkt. No. 32, at 2-3). Further, Ms. Crouch argues that, in the alternative, Mr. Crouch should be understood as acting *in loco parentis* for his unborn child at the time of his death.

In Arkansas, wrongful death actions are governed by Arkansas Code Annotated § 16-62-102. Subsection (a)(1) provides that:

> Whenever the death of a person or an unborn child as defined in § 5-1-102 is caused by a wrongful act . . . and the act . . . would have entitled the party injured to maintain an action . . . if death had not ensued . . . the person or company or corporation that would have been liable if death had not ensued shall be liable . . .

Arkansas Code Annotated § 5-1-102 as referenced provides, in relevant part, as follows:

(13)(A) "Person", "actor", "defendant", "he", "she", "her", or "him" includes:

    (i) Any natural person; and

    (ii) When appropriate, an organization as defined in § 5-2-501.

(B)(i)    (a) As used in §§ 5-10-101 -- 5-10-105 and 5-4-604, "person" also includes an unborn child in utero at any stage of development.

    (b) "Unborn child" means offspring of human beings from conception until birth.

    (ii) This subdivision (13)(B) does not apply to:

        (a) An act that causes the death of an unborn child in utero if the act was committed during a legal abortion to which the woman consented, including an abortion performed to remove an ectopic pregnancy or other nonviable pregnancy when the embryo is not going to develop further;

        (b) An act that is committed pursuant to a usual and customary standard of medical practice during diagnostic testing or therapeutic treatment;

        (c) An act that is committed in the course of medical research, experimental medicine, or an act deemed necessary to save the life or preserve the health of the woman;

        (d) Assisted reproduction technology activity, procedure, or treatment; or

        (e) An act occurring before transfer to the uterus of the woman of an embryo created through in vitro fertilization.

    (iii) Nothing in this subdivision (13)(B) shall be construed to allow the charging or conviction of a woman with any criminal offense in the death of her own unborn child in utero. . . .

Ark. Code Ann. § 5-1-102.

    Arkansas Code Annotated § 16-62-102(a)(1) was amended in 2001 to allow "a viable fetus" to maintain a cause of action for wrongful death; then, in 2013, the subsection was amended to change "viable fetus" to "unborn child." Notably, Arkansas Code Annotated § 16-62-102(d),

which lists the possible beneficiaries of a wrongful death claim, was not altered in 2001 or 2013 to include viable fetuses, unborn children, or "persons" such as would include unborn children.

Ms. Crouch argues that interpreting the statute to exclude unborn children as beneficiaries is an improper statutory interpretation because, she argues, such an interpretation does not give meaning to the intent of the statute and does not give words the same meaning throughout the statute (Dkt. No. 32, at 2). Ms. Crouch also argues that the term "child" has already been interpreted in other Arkansas statutes to include "unborn children." Further, she argues that, regardless, Mr. Crouch was acting *in loco parentis* to the unborn child at issue and that the then-unborn child alternatively qualifies as a beneficiary on that basis (*Id.*, at 2-3).

Federal courts apply state rules of statutory construction when interpreting state statutes. *In re Dittmaier*, 806 F.3d 987, 989 (8th Cir. 2015). In Arkansas, "[t]he cardinal rule of statutory construction is to effectuate the legislative will." *City of Benton v. Alcoa Rd. Storage, Inc.*, 513 S.W.3d 259, 261 (Ark. 2017). "In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language." *Id.* "When the language of the statute is plain and unambiguous, conveying a clear and definite meaning, we need not resort to the rules of statutory construction." *Id.*

The State of Arkansas has held that, while "the wrongful-death statute is a remedial statute that should be interpreted liberally with a view toward accomplishing its purposes," "the action is one that is of statutory creation, and is in derogation of or at variance with the common law, and therefore, [is to be construed] strictly. . . Nothing is to be taken as intended that is not clearly expressed." *Rhuland v. Fahr*, 155 S.W.3d 2, 6–7 (Ark. 2004).

The Arkansas Supreme Court has acknowledged that, when used in the wrongful death statute, the word "person" is intended to include a viable fetus. *See Aka v. Jefferson Hosp. Ass'n, Inc.*, 42 S.W.3d 508 (Ark. 2001). Here, as both parties acknowledge, the wrongful death statute

7

includes as beneficiaries "[t]he surviving spouse, children, father, mother, brothers, and sisters of the deceased person." Ark. Code Ann. § 16-62-102(d). The Arkansas Supreme Court, relying upon the term "surviving," also has determined that "children who are not living at the time of the deceased person's death are not among the statutory beneficiaries. . . ." *Babb v. Matlock*, 9 S.W.3d 508, 509-10 (Ark. 2000). Notably, the statute in its description of beneficiaries has not been amended to included viable fetuses, unborn children, or "persons" such as would include unborn children. The Court presumes that the Arkansas legislature's statutory language is intentional and, therefore, that the Arkansas legislature did not intend to include unborn children as beneficiaries under the law. Ms. Crouch's appeal to other Arkansas statutes and the Arkansas Constitution do not alter this analysis with regard to the wrongful death statute.

With regard to Ms. Crouch's argument that Mr. Crouch was acting *in loco parentis* to the unborn child at the time of his death, the Court notes that Black's Law Dictionary defines "*in loco parentis*" as "relating to, or acting as a temporary guardian or caretaker of a child, taking on all or some of the responsibilities of a parent." Black's Law Dictionary (11th ed. 2019); *see also Standridge v. Standridge*, 803 S.W.2d 496, 500 (Ark. 1991) (examining definition). "*In loco parentis* refers to a person who has fully put herself in the situation of a lawful parent by assuming all the obligations incident to the parental relationship and who actually discharges those obligations." *Winn v. Bonds*, 426 S.W.3d 533, 537 (Ark. Ct. App. 2013). As Ms. Crouch asserts that Mr. Crouch was the biological parent of the unborn child, the Court understands that Mr. Crouch was not acting as a "temporary guardian or caretaker" of the child by "taking on all or some of the responsibilities of a parent," nor was he putting himself in the situation of a lawful parent. He was, based on the record evidence before the Court, the unborn child's parent. *See Bizzell v. Transport Corp. of Am., Inc.*, Case No. 4:16-cv-00376 JLH, 2017 WL 3381358, at *6 (E.D. Ark. 2017) (examining this distinction). To hold that parents of unborn children act *in loco*

*parentis* to their unborn children would blur the lines of distinct legal categories. The Court is not inclined to do that on this record evidence.

Construing the statute strictly, unborn children are not included as beneficiaries in Arkansas's wrongful death statute. This Court takes the Arkansas legislature at its word. Therefore, based on the record evidence before the Court and drawing all reasonable inferences in Ms. Crouch's favor, the Court grants defendants' motion for partial summary judgment regarding claims of wrongful death beneficiaries under Arkansas Code Annotated § 16-62-102 (Dkt. No. 12). The Court holds that Mr. Crouch's unborn child at the time of his death is not a proper beneficiary under the Arkansas wrongful death statute.

### IV. Conclusion

Therefore, the Court denies defendants' motion for partial summary judgment on Ms. Crouch's claims against MWC and grants defendants' motion for partial summary judgment regarding claims of wrongful death beneficiaries under Arkansas Code Annotated § 16-62-102 (Dkt. Nos. 10, 12).

It is so ordered this 13th day of September, 2021.

_____
Kristine G. Baker
United States District Judge