IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**ELIZABETH CROUCH**                                                                                      **PLAINTIFF**

v.                              Case No. 2:20-cv-00078 KGB

**MASTER WOODCRAFT CABINETRY, LLC,** *et al.*                                  **DEFENDANT**

**ORDER**

Before the Court are defendants Master Woodcraft Cabinetry, LLC ("MWC") and Walter Earl Hicks' (jointly "defendants") motion *in limine* to exclude opinions of Larry Cole, motion *in limine* to exclude opinions of Ralph Scott, Jr., Ph.D., and motion for ruling to declare Arkansas Code Annotated § 16-64-122(d) inapplicable or, in the alternative, unconstitutional (Dkt. Nos. 14, 16, 20).

I.      Motions *In Limine* To Exclude Expert Opinion

    A.      Legal Standard

Federal Rule of Evidence 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. The rule clearly is one of admissibility rather than exclusion." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal quotations and citations omitted).

In determining whether expert testimony should be admitted, the district court must decide

if the expert's testimony and methodology are reliable, relevant, and can be applied reasonably to the facts of the case. *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012); *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010). Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the district court must conduct this initial inquiry as part of its gatekeeping function. *Watson*, 668 F.3d at 1015. The Court must be mindful that "*Daubert* does not require proof with certainty." *Sorensen By & Through Dunbar v. Shaklee Corp.,* 31 F.3d 638, 650 (8th Cir. 1994). Rather, it requires that expert testimony be reliable and relevant. *Id.* "The inquiry as to the reliability and relevance of the testimony is a flexible one designed to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 748, 757 (8th Cir. 2006) (quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)).

The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence the admissibility of the expert's testimony. *Id.* at 757-58. To satisfy the reliability requirement for admission of expert testimony, "the party offering the expert testimony must show by a preponderance of the evidence that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Barrett*, 606 F.3d at 980 (internal quotation marks and citation omitted). To satisfy the relevance requirement for the admission of expert testimony, "the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue." *Id.* (citing *Marmo*, 457 F.3d at 757).

The Court examines the following four non-exclusive factors when determining the reliability of an expert's opinion: (1) "whether it can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential

2

rate of error"; and (4) "[the method's] 'general acceptance.'" *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009) (quoting *Daubert*, 509 U.S. at 593-94). These factors are not exhaustive or limiting, and the Court must use the factors as it deems fit to tailor an examination of the reliability of expert testimony to the facts of each case. *Id.* In addition, the Court can weigh whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case. *Id.* While weighing these factors, the Court must continue to function as a gatekeeper who separates expert opinion evidence based on good grounds from subjective speculation that masquerades as scientific knowledge. *Id.*

The Court recognizes that experts may, at times speculate, "but too much [speculation] is fatal to admission." *Grp. Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 760 (8th Cir. 2003) (citations omitted). Thus, speculative expert testimony with no basis in the evidence is inadmissible. *Weisgram v. Marley Co.*, 169 F.3d 514, 518-19 (8th Cir. 1999), *aff'd*, 528 U.S. 440 (2000) (reversing a district court for allowing a witness who was qualified as a fire investigator "to speculate before the jury as to the cause of the fire by relying on inferences that have absolutely no record support").

Likewise, expert opinion is inadmissible if its sole basis is studies that do not provide a sufficient foundation for the opinion. *See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 145 (1997). When studies form a basis for an expert's opinion, then, the Court must determine if there is an adequate basis for the experts' opinion and whether there is "too great an analytical gap between the data and the opinion proffered." *See id.* at 146.

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for

3

the opinion in cross-examination." *Bonner v. ISP Techs., Inc.,* 259 F.3d 924, 929 (8th Cir. 2001) (internal citation omitted). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Id.* at 929-30 (quoting *Hose v. Chi. Nw. Transp. Co.,* 70 F.3d 968, 974 (8th Cir. 1996)).

### B.     Defendants' Motion To Exclude Expert Testimony Of Larry Cole

Defendants move to exclude Mr. Cole's expert testimony as a whole as inadmissible under Federal Rules of Evidence 403, 702, and 703, arguing that his written reports are merely conclusory statements and personal opinions (Dkt. No. 14, ¶ 1).[1] Ms. Crouch opposes the motion, arguing that Mr. Cole's testimony is sufficiently reliable so as to be admissible (Dkt. No. 28, at 7).

#### 1.     Mr. Cole's Opinions And Testimony

In his report, Mr. Cole states that he has "36 years of experience in motor fleet transportation, teaching Federal Motor Carrier Safety Regulations and trucking industry standards." (Dkt. No. 14-1, at 1). Mr. Cole has served as Vice President of Safety and Risk Management and has been responsible for safety, compliance, and driver supervision and hiring (*Id.*). In his positions, he has been required to know Federal Motor Carrier Safety Regulations, State Transportation Codes (rules of the road), and many other regulations and standards (*Id.*). His responsibilities have included, but were not limited to, management and supervision to comply with commercial motor vehicle inspection, maintenance, repair, driver supervision, driver hiring, and driver training to comply with Federal Motor Carrier and state regulations (*Id.*). Mr. Cole is certified as a Smith System Defensive Driver Instructor, sleep deprivation/fatigue instructor, as

---

[1] Defendants also argue that, to the extent Mr. Cole's testimony is directed toward MWC, it is irrelevant because Ms. Crouch has no direct claims against MWC (Dkt. No. 14, ¶ 1). However, the Court considered and denied defendants' motion for summary judgment on these grounds (Dkt. No. 42). Therefore, the Court will not reanalyze those arguments here. The direct claims against MWC remain; the Court overrules the relevance objection.

4

well as other certifications relating to motor carrier operations (*Id.*). Mr. Cole is a Defensive Driving Instructor for the State of Arkansas for CDL and non-CDL vehicle operators (*Id.*).

Mr. Cole's report indicates that, in preparing the report, he reviewed: Federal Motor Carrier Safety Regulations, Texas Commercial Motor Vehicle Drivers Handbook, Arkansas State Police Crash Report 481019066F, Arkansas Highway Police Commercial Vehicle Crash Inspection Report, Photographs, Deposition of Randy Owens – Senior Vice President of MWC, Deposition of Earl Hicks – MWC Driver, Commercial Truck and Bus Safety – The Role of Safety Culture in Preventing Commercial Motor Vehicle Crashes, and USDOT Federal Highway Administration – Freight Management and Operations (*Id.*, at 12).

In his opinions, Mr. Cole asserts that MWC has a duty to have a written driver safety program (*Id.*). He comments that a prudent motor carrier would have a written driver safety program (*Id.*). Mr. Cole also asserts that, under the Federal Motor Carrier Safety Regulations, the trailer involved in the accident was required to have a current Department of Transportation ("DOT") inspection (*Id.*). Mr. Cole further asserts that it "defies trucking Safety logic" that MWC's Senior Vice President did not know why the trailer involved in the accident did not have a current DOT inspection (*Id.*).

Mr. Cole asserts that MWC had a "duty to promote a positive safety culture with the company but most especially with their commercial motor vehicle drivers." (*Id.*). Mr. Cole states that "[t]he term Safety Culture in the trucking industry is not a 'Larry Cole' idea." (*Id.*, at 13). Mr. Cole asserts that he has "evaluated over one hundred trucking company's [sic] safety programs as a consultant." (*Id.*). However, Mr. Cole acknowledges that he has not evaluated MWC's safety program (*Id.*). After reviewing of the deposition of MWC's Vice President of Safety and Dispatch, Mr. Cole concludes that, in his opinion, "MWC's safety program was not showing care for its drivers or the driving public." (*Id.*).

With regard to Mr. Hicks, Mr. Cole opines that Mr. Hicks had a duty to "know that he should not stop upon the traveled portion of a highway or shoulder of a highway for any cause other than necessary stops" (*Id.*, at 14).  Mr. Cole states that it is more likely than not that Mr. Hicks could have placed three bidirectional triangles behind the tractor trailer rig in less than five minutes, per Federal Motor Carrier Safety Regulation 392.22 (*Id.*).  Mr. Cole also states that Mr. Hicks had a duty to use his available GPS to find a truck stop near him (*Id.*).  Mr. Cole also states that Mr. Hicks had a duty to know that parking on the side of the interstate is a hazard to the driving public (*Id.*, at 16).

Mr. Cole states that the trucking industry does not recognize having to urinate while operating a commercial motor vehicle to be an emergency situation (*Id.*).

**2.     Application Of Rule 702 To Mr. Cole's Testimony**

The Court will not exclude all of Mr. Cole's testimony.  Mr. Cole will not be allowed to opine on a factual matter on which the jurors are entirely capable of making a determination.  *See Lee v. Andersen,* 616 F.3d 803, 809 (8th Cir. 2010); *Westcott v. Crinklaw,* 68 F.3d 1073, 1076 (8th Cir. 1995).  Assuming that Mr. Cole is properly qualified and that proper disclosures of his opinions have been made, Mr. Cole may testify about industry standards, statutes, regulations, and practices, based on his training, education, and experience.  If he is properly qualified, Mr. Cole will be allowed to testify whether or not the events that occurred in this case were appropriate in the circumstances presented, under recognized trucking industry standards, statutes, regulations, and practices.  *Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.,* 320 F.3d 838, 841 (8th Cir. 2003).  Also, Mr. Cole may testify as to what routine and acceptable trucking industry practices are, based on his training and expertise.  *Id.*

As a result, the Court denies defendants' motion *in limine* to exclude all of Mr. Cole's testimony (Dkt. No. 14).  If defendants wish to renew their motion as to specific opinions Mr. Cole

intends to offer, they may do so, and the Court will consider specific arguments as to specific proffered opinions.

C. **Defendants' Motion To Exclude Expert Testimony Of Ralph Scott**

Defendants move to exclude only certain expert testimony of Dr. Scott, an economist (Dkt. No. 16, ¶ 1). Dr. Scott has generated two slightly different reports in this case (Dkt. Nos. 16-1, 16-2). Defendants argue that, while Dr. Scott is a qualified expert in the economic field, the challenged testimony is unreliable because it is not based on the evidence of this case and is wholly speculative (Dkt. No. 16, ¶ 4). In the report included as Exhibit A to the present motion, defendants argue that the section titled "Residual Value of Life in Excess of Earning Capacity" be excluded (Dkt. No. 16-1, at 3). In the report included as Exhibit B to the present motion, defendants argue that the section titled "Loss of Life" be excluded (Dkt. No. 16-2, at 3). Ms. Crouch opposes the motion, arguing that Dr. Scott's testimony is sufficiently reliable (Dkt. No. 30).

1. **Dr. Scott's Opinions And Testimony**

In the challenged portions of his testimony, Dr. Scott states that "the present value of lifetime earnings would represent a minimum valuation of the loss of life because it focuses exclusively on productivity and ignores other aspects of the value of life." (Dkt. No. 16-1, at 3). Dr. Scott has provided information on Mr. Crouch's statistical life expectancy based on the Center for Disease Control publication, *United States Life Tables, 2017* (*Id.*). Dr. Scott also includes computations in which future residual value of life figures can be reduced to present value, which he asserts is consistent with the methodology advocated by the United States Government, Office of Management and Budget in *Circular A-4*, September 17, 2003, in which guidelines for incorporating statistical value of life into cost/benefit analysis are established (*Id.*). Then, Dr. Scott proposes to offer "the value that government agencies place on the statistical value of life" by

7

citing documents published by the United States Department of Transportation and the Environmental Protective Agency suggesting values of life (*Id.*).

### 2. Application Of Rule 702 To Dr. Scott's Testimony

Defendants argue that Dr. Scott should be precluded from offering any opinions regarding "residual value of life" and/or "loss of life" beyond the economic loss of household services or potential earnings.

Arkansas law provides that in addition to other elements of damages, "a decedent's estate may recover for the decedent's loss of life as an independent element of damages." Ark. Code Ann. § 16-62-101(b). The Arkansas Supreme Court has construed the statute to allow for damages that a decedent would have placed on her own life. *Durham v. Marberry*, 156 S.W.3d 242, 248 (Ark. 2004). An estate seeking loss of life damages must present some evidence that the decedent valued his life from which a jury could infer that value and on which it could base an award of damages. *One Nat'l Bank v. Pope*, 272 S.W.3d 98, 102 (Ark. 2008).

The court in *Hannibal v. TRW Vehicle Safety Sys., Inc.*, Case No. 4:16-cv-00904 JLH, 2018 WL 3797500, at *2 (E.D. Ark. Aug. 9, 2018), confronted whether to permit testimony similar to that proposed by Dr. Scott from proposed expert Dr. Rebecca Summary. As the *Hannibal* court explained:

> No court applying Arkansas law has ruled as to whether expert testimony may be admitted to assist the jury in determining loss of life damages. An overwhelming majority of courts from other jurisdictions, however, have concluded that the methodology adopted by Dr. Summary does not meet the *Daubert* standards and may not be admitted into evidence. *Smith v. Jenkins*, 732 F.3d 51, 66 (1st Cir. 2013); *Kurncz v. Honda North America, Inc.*, 166 F.R.D. 386, 388-89 (W.D. Mich. 1996). Dr. Summary explains in her report that the value of a statistical life methodology is based upon the trade-off between risk and money. It involves the assignment of monetary values to death risks based upon how much persons are willing to spend for a small reduction in the risk of death. Dr. Summary's value here is based upon government studies used to assign values to human lives in conducting cost/benefit analyses for potential government projects. The First Circuit in *Smith* has explained why this is not a reliable methodology for

> determining the value of a human life. 732 F.3d at 66-67. In addition to being unreliable, Dr. Summary's analysis would not assist the jury in determining what value Krista Hannibal placed on her own human life. It has nothing to do with Krista specifically. *Cf. id.* at 67 ("Even assuming that Dr. Smith's formula is a reliable measure of the value of life, it was of no assistance to the jury in calculating Smith's loss of enjoyment of life.").

2018 WL 3797500, at *3. This Court adopts the same reasoning and, therefore, excludes Dr. Scott's proposed testimony that would present for the jury's "consideration the value that government agencies place on the statistical value of life," including the documents published by the United States Department of Transportation and the Environmental Protective Agency suggesting values of life (Dkt. No. 16-1, at 3).

The Court does not understand defendants to be challenging the remainder of Dr. Scott's proposed testimony, including but not limited to statistical life expectancy figures from the Center for Disease Control publication cited or discussions of admissible figures being reduced to present value. If defendants intend to challenge the admissibility of that proposed testimony, as well, they may file a motion with the Court clarifying their position.

**II.      Motion To Declare Arkansas Code Annotated § 16-64-122(d) Inapplicable, Or, In The Alternative, Unconstitutional**

Defendants also move to declare Arkansas Code Annotated § 16-64-122(d) inapplicable to this case or, in the alternative, unconstitutional (Dkt. No. 20). Arkansas Code Annotated § 16-64-122(d) states:

> In cases where the issue of comparative fault is submitted to the jury by interrogatory, counsel for the parties shall be permitted to argue to the jury the effect of an answer to any interrogatory.

Ms. Crouch argues in response that the Court does not need to rule on this issue at this time because it is not yet ripe (Dkt. No 33, ¶ 1). It is Ms. Crouch's position that, if the Court is to address this issue, it should be at the time this case is being submitted to a jury and the jury instructions are being prepared (*Id.*). Further, she represents that she "does not anticipate nor plan to bring forth a

9

Fed. R. Civ. Pro. 49 argument as referenced by Defendants in their motion so therefore does not see a need for ruling on the constitutionality of the statute." (*Id.*, ¶ 2). She also maintains that she believes this case can be submitted on a general verdict form but that, even if special interrogatories are required, she "does not anticipate [she] will argue the effect of a numeric value to the fault of each." (*Id.*, ¶ 3).

Based upon representations from plaintiffs and for good cause shown, at this time, the Court denies without prejudice the motion (Dkt. No. 20). Defendants may renew their motion, if necessary, at any point during the trial including but not limited to when the parties and the Court address jury instructions and appropriate closing argument. Having based this decision in part on representations from plaintiffs, the Court orders that plaintiffs, their counsel, and their witnesses are instructed by the Court *in limine* to avoid offering any testimony, evidence, or argument on this issue without first approaching the Court to determine if defendants renew their motion and, if so, to receive a ruling from the Court.

It is so ordered this 13th day of September, 2021.

*Kristine G. Baker*
_____
Kristine G. Baker
United States District Judge